United States District Court,
S.D. Ohio, Eastern Division.
Casey [Williams] HART, et al., Plaintiffs,
v.
PAINT VALLEY LOCAL SCHOOL
DISTRICT, et al., Defendants.
**No. C2-01-004.**

Nov. 15, 2002.

Action was brought against school district and various school employees arising out of teacher's alleged sexual misconduct against student. Upon defendants' motions for summary judgment, the District Court, Sargus, J., held that: (1) genuine issue of material fact existed as to whether the school board knew of a substantial risk of sexual abuse to student; (2) genuine issues of material fact existed as to whether school board acted with deliberate indifference in responding to complaints regarding teacher's sexual misconduct; (3) "intra-corporate conspiracy" doctrine prohibited imposition of liability against school defendants under § 1985(3); (4) school district was not liable under Ohio law for negligent retention of teacher; (5) mother's loss of consortium claim arising out of teacher's alleged sexual misconduct against her son was not redressable under § 1983 or Title IX; and (6) punitive damages could not be awarded against school district under Title IX or § 1983.

Motion granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure** ⚖2491.5
170Ak2491.5 Most Cited Cases
Genuine issue of material fact existed as to whether the school board knew of a substantial risk of sexual abuse to student in light of prior complaints against teacher, precluding summary judgment in favor of school defendants on student's Title IX claim based on school board's alleged deliberate indifference to teacher's misconduct. 20 U.S.C. § 1681(a).

**[2] Civil Rights** ⚖1066
78k1066 Most Cited Cases
(Formerly 78k128)
Actual notice standard does not require that offending teacher have actually committed previous acts of sexual abuse before holding school district liable for teacher's misconduct under Title IX nor does the law require that the appropriate official have actual knowledge of current abuse; rather, actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to children in the school based on prior complaint of other students. Education Amendments of 1972, § 901(a), 20 U.S.C.A. § 1681(a).

**[3] Federal Civil Procedure** ⚖2491.5
170Ak2491.5 Most Cited Cases
Genuine issues of material fact existed as to whether school board acted with deliberate indifference in responding to complaints regarding teacher's sexual misconduct, precluding summary judgment in favor of school defendants on abused student's Title IX and § 1983 claims. Education Amendments of 1972, § 901(a), 20 U.S.C.A. § 1681(a); 42 U.S.C.A. § 1983.

**[4] Conspiracy** ⚖2
91k2 Most Cited Cases
Because they were all members of the same collective entity, "intra-corporate conspiracy" doctrine prohibited imposition of liability against school defendants under § 1985(3) for their alleged parts in school board's alleged deliberate indifference to teacher's sexual misconduct where there was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

no showing that any defendant attempted to conceal or destroy evidence. 42 U.S.C.A. § 1985(3).

**[5] Schools** ☞89.2

345k89.2 Most Cited Cases

Ohio exception to general rule of non-liability of school districts for acts or omissions of an employee does not immunize school districts from liability for negligence occurring within or on the grounds of the relevant government building. Ohio R.C. § 2744.02(B)(4).

**[6] Federal Civil Procedure** ☞2515

170Ak2515 Most Cited Cases

Genuine issue of material fact existed as to whether school board employees acted with malice, in bad faith, or in a wanton or reckless manner, precluding summary judgment in favor of school board under Ohio immunity statute on student's state law claims arising from teacher's alleged sexual abuse. O.R.C. § 2744.03(A)(6).

**[7] Schools** ☞89.2

345k89.2 Most Cited Cases

Since teacher had contractually and legally protected employment rights, and could not be discharged without just cause, school district was not liable under Ohio law for negligent retention of teacher after receiving complaints of his sexual inappropriateness towards the students.

**[8] Schools** ☞89.3

345k89.3 Most Cited Cases

School district could not be held liable under Ohio law for alleged assault and battery committed by teacher upon student since teacher's sexual misconduct against student, if proven, was outside the scope of his employment with the school district and did not in any way promote the business of his employer. Restatement (Second) of Agency

§ 219(2)(d).

**[9] Damages** ☞57.25(2)

115k57.25(2) Most Cited Cases

(Formerly 115k50.10)

Absent evidence of extreme and outrageous behavior and serious emotional injury, school district could not be held liable under Ohio law for intentional infliction of emotional harm based on teacher's alleged sexual misconduct against student.

**[10] Schools** ☞89.3

345k89.3 Most Cited Cases

(Formerly 379k21)

School district could not be held liable under Ohio law for invasion of privacy stemming from teacher's alleged sexual misconduct against student since teacher's sexual misconduct, if proven, was outside the scope of his employment with the school district and did not in any way promote the business of his employer.

**[11] Parent and Child** ☞7(1)

285k7(1) Most Cited Cases

Mother's loss of consortium claim arising out of teacher's alleged sexual misconduct against her son was not redressable under § 1983 or Title IX since it did not represent an injury based on a deprivation of mother's rights, privileges or immunities. Education Amendments of 1972, § 901(a), 20 U.S.C.A. § 1681(a); 42 U.S.C.A. § 1983.

**[12] Civil Rights** ☞1465(2)

78k1465(2) Most Cited Cases

(Formerly 78k275(2))

Punitive damages could not be awarded against school district under Title IX or § 1983. Education Amendments of 1972, § 901(a), 20 U.S.C.A. § 1681(a); 42 U.S.C.A. § 1983.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

OPINION AND ORDER

SARGUS, J.

 **\*1** This matter is before the Court for consideration of the Motion for Summary Judgment filed by Defendants Paint Valley Local School District, Iris Ward, Gregory Haas, William Jones, Janice Leedom, Michael Carroll, Phillip Satterfield and Gary Uhrig  [FN1] and the Plaintiffs' Motion to Dismiss Iris Ward, Gregory Haas, Janice Leedom, Michael Carroll, Robert Ward, Phillip Satterfield and Gary Uhrig's Individual Capacity Suit Under 42 U.S.C. § 1983. For the reasons that follow, Plaintiffs' Motion to Dismiss Individual Capacity Suit Under 42 U.S.C. § 1983 (Doc. # 67) is granted; and Defendants' Motion for Summary Judgment (Doc. # 61) is granted in part and denied in part.

> FN1. Defendant Harry Arnold is not one of the moving Defendants on this Motion and has not filed a Motion for Summary Judgment of his own.

### I.

 Defendant Harry Arnold was a teacher in the Paint Valley Local School District from 1973 until he surrendered his teaching license to the Ohio Department of Education in November of 2000. Arnold taught special education for fourth, fifth and sixth graders at Twin Elementary until 1977, was an instructor at the high school until 1984 and returned to Twin Elementary in 1984. (Arnold Dep., at 11, 45-52-53.)  [FN2]

> FN2. Arnold testified that he cannot recall the specific dates/years that he taught at the high school, but believes it was approximately between 1977 and 1984. (Arnold

Dep., at 45-52.)

 A. *Allegations Involving Plaintiff Casey Williams*

 In the fall of 1999, Plaintiff Casey Williams had just moved to Paint Valley School District before his fourth grade year. (Hart Dep ., 103; Williams Dep., 30.) Plaintiff Williams was assigned to Defendant Arnold's fourth grade class. Plaintiff Williams missed several days of school during the second week of classes due to illness. (Arnold Dep., at 82-83; Williams Dep., at 138.) When he returned from his absence, Arnold kept Plaintiff Williams in from afternoon recess in order to work on assignments that he had missed during his illness. (Arnold Dep., 85-91; Williams Dep., at 138.)

 Plaintiffs allege that over a two-week period of time following his return to the classroom after his illness, Defendant Arnold inappropriately touched Plaintiff Williams. Specifically, Plaintiffs allege that the first time Arnold kept Plaintiff Williams in at recess, Arnold directed the boy to sit beside him at the teacher's desk. From this position, Plaintiffs allege that Arnold put his arm around Plaintiff Williams with one hand and rubbed the inside of the boy's thigh with his other hand, sometimes bumping against Plaintiff Williams' genitalia. (Williams Dep., at 151, 154-55.) Plaintiff Williams stated that Arnold repeated this pattern of conduct several times a week for the next two weeks. (Williams Dep., at 151.)

 On October 11, 1999, approximately two weeks after the alleged inappropriate touching began, Plaintiff Williams confided in his mother, Plaintiff Sarah Hart, about his feelings that Mr. Arnold was doing something wrong. (Williams Dep., at 124-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25, Hart Dep., at 142-48.) Hart immediately reported the alleged misconduct to the Ross County Sheriff's Department, which then contacted Ross County Children's Services. (Hart Dep., at 151.) Plaintiffs did not report the allegations to the School District. (Satterfield Dep., at 18-19.) Superintendent Phillip Satterfield did, however, receive notification of the complaint against a member of the staff the following day from Detective Tony Weaton and Lara Butt, a social worker from the Ross County Children's Services. (Wheaton Dep., at 172; Satterfield Depo., at 19-21.) Ross County Children's Services and the Sheriff's Department began an immediate investigation into the allegations against Defendant Arnold.

 **\*2** Satterfield telephoned the School Board members individually to inform them of the complaint against Defendant Arnold. Once Superintendent Satterfield and the Board members became aware of the allegations against Arnold, they contacted an attorney before formulating a response. (Aff.Nolan, ¶ ¶ 5-6.) After discussing the options with counsel and in consideration of Children's Services' recommendation not to leave Mr. Arnold alone with any students, the School District employed and placed a permanent teacher's aide to remain in the classroom. (Satterfield Dep., at 24-26, Nolde Dep., 12-14, Nolan Aff., ¶ 6, attachment (Ltr. from Ross County Children's Services. [FN3]) The School District did not conduct its own investigation of Plaintiff Williams' complaint. Superintendent Satterfield testified that he did not believe that the School District had any obligation to conduct and complete an independent investigation once Children's Services and the Sheriff's Department began their investigations. (Satterfield Dep., at 30.) Neither Satterfield nor the Board members

were privy to what the Sheriff and/or Children's Services did to investigate the matter or what information they received during the investigation. (Satterfield Dep., 31.) The School District cooperated with the Sheriff's Department and Children's Services in their interviews and investigations.

> FN3. Ross County Children's Services specifically recommended that "Mr. Arnold not be left alone with any students unless supervised by another adult. This will protect the students as well as Mr. Arnold from further allegations of inappropriate touching." (Nolan Aff., ¶ 6, attachment).

 Sarah Hart did not permit Plaintiff Williams to return to Arnold's class following October 12, 1999. Superintendent Satterfield arranged for in-home schooling. On November 15, 1999, after being out of school for more than a month, Plaintiff Williams was transferred to another school, Bainbridge Elementary. (Hart Dep., at 123, 134, Satterfield Dep., at 37-38.)

 Arnold was indicted on two counts [FN4] of Gross Sexual Imposition on May 30, 2000. The School Board placed Arnold on paid administrative leave as of the date of the indictment. [FN5] (Satterfield Dep., at 58; Arnold Dep., at 132.) Arnold resigned and surrendered his teaching certificate in exchange for dismissal of the criminal charges. (Arnold Dep., at 132, 134-35.)

> FN4. One count involved the allegations asserted by Plaintiff Casey Williams and the second count related to another male student who is not involved in this lawsuit. (Arnold Dep., at 134-35.) The second count involved an incident

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which occurred after the matters alleged by the Plaintiffs.

FN5. Satterfield placed Arnold on administrative leave as of the date of the indictment. This decision did not require Board approval, as school was out for the summer at that point. The Board later took action on September 13, 2000 to approve the administrative leave. (Satterfield Dep., at 57.)

B. *Previous Allegations Against Arnold in 1976 and 1990*

During the 1975-1976 school year, Defendant Arnold taught fourth and fifth grade at Twin Elementary. In 1976, four of Arnold's male students in a reading class alleged that Arnold had inappropriately touched each of them in essentially the same manner that Casey Williams had described. At least one student eyewitness, Jamie Bakenhaster, observed Arnold inappropriately touching his male students under a reading table when she picked up a pencil from the floor. (Bakenhaster Dep., at 34.) The students, including the eye-witness, and their parents complained to the school administration and the Board. (Arnold Dep., at 34, 40, Exh. 1 (Board Minutes); Donnells Dep., at 18-20. [FN6]) The Board met in executive session to discuss the allegations against Arnold. Terry Childers, the principal at the time, interviewed several students and teachers regarding the validity of the allegations. He drew no final conclusions and determined that ongoing observations were in order. (Childers Dep., at 38.) Childers tried to be more visible in Arnold's classroom and advised Arnold to leave his door open, use aides more frequently in the room particularly when holding a conference with a child, and to eliminate the

use of a reading table. (Childers Dep., at 38-40.) No criminal complaint was ever filed against Defendant Arnold in 1976. A 1976 Board Member, William Donnells, testified that neither the Board nor the District Administration followed up on the students' allegations against Mr. Arnold with Principal Childers or the parents of the children. Donnells testified that he was not interested in the results of Childers' investigation because the parents had not felt strongly enough about the allegations to file a criminal complaint. (Donnells Dep., at 20.)

FN6. Donnells, a Board member in 1976, recalls that he instructed the parents of the children who complained about Arnold to file a complaint with the sheriff's office and offered to help the parents if they did not know how that process worked. (Donnells Dep., at 17, 38.) Donnells did not believe that he had any further obligation to do anything else if the parents did not feel strongly enough to go to the sheriff. He also believed that if the parents went to the sheriff, the board would have authority to take more drastic measures. (*Id.,* at 20-22.)

**\*3** After the 1976 school year, there were no other complaints of misconduct against Arnold until 1990. [FN7] During the spring of 1990, Cory Manion, a student in Arnold's sixth grade class, alleged that Arnold inappropriately touched him, again in essentially the same manner as described by the students in 1976 and by Casey Williams in 1999. (Manion, Cory Dep., at 12, 14-22. [FN8]) Manion's parents met with then Twin Elementary Principal Newsome and Arnold about the allegations of sexual misconduct. Newsome interviewed Arnold and Manion, and notified the Superintendent, Thomas

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Williamson, and Ross County Children Services. (Newsome Aff.; Williamson Dep., at 47.) The Board discussed the matter at its regular meeting on March 28, 1990, and discussed its response to the complaint during Board meetings in April and May 1990. (Leedom Dep., at 11-13.) The Sheriff's Department and Children's Services conducted an investigation. The investigation concluded with a finding of no substantiating evidence of Manion's claim against the denial of Mr. Arnold. (Nichols Aff., ¶ 3.) The Board took no action against Arnold and concluded that he could remain in the classroom. (Williamson Dep., at 53.) Despite no official Board action, Principal Newsome again directed Arnold to leave the classroom door open.  [FN9] Arnold was also told by Newsome to stop keeping students in his classroom during recess and to avoid being alone with students. (Newsome Aff.) There is no indication in the record that Newsome or anyone else took any further action to ensure the safety of the students by providing on-going observation or monitoring of Arnold. While Newsome testified that he would often walk the halls, check the rooms of the school to make sure all children were out of the classroom during recess, (Newsome Dep., at 43, 52), Newsome also testified that he would observe Arnold's classroom as a matter of course, and he did not consider his duty to monitor Arnold as any different from his obligation to monitor any other subordinate. (Newsome Dep., at 43, 59-59.)

FN7. As noted, Arnold left the elementary school 1977 and did not return until 1984.

FN8. Cory Manion testified that Mr. Arnold placed his hand inside of Cory's pants. (Manion, Cory Dep., at 22.)

FN9. Newsome also testified that the lock on the guidance counselor's door was removed as a safeguard to students. (Newsome Dep., at 41.)

The allegations raised in 1976 and 1990 resulted in no formal action against Arnold. No discipline was imposed nor was written notification or warning placed in his personnel file. No official preventative policy was created or implemented. While Childers' and Newsome's directives were communicated to Arnold, no follow-up to ensure that these directives were obeyed is noted in the record.

## II.

The procedure for considering whether summary judgment is appropriate is set forth in Federal Rule of Civil Procedure 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**\*4** The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely " 'show that there is some metaphysical doubt as to the material facts." ' *Id.* (quoting *Matsushita,* 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

III.
A. *Plaintiffs' Motion to Dismiss Individual*

*Capacity Suit Under 42 U.S.C. § 1983*

On July 22, 2002, Plaintiffs filed a Motion to Dismiss the individual capacity claims under 42 U.S.C. § 1983 against Iris Ward, Gregory Haas, William Jones, Janice Leedom, Michael Carroll, Robert Ward, [FN10] Phillip Satterfield and Gary Uhrig. In the Motion, Plaintiffs move for dismissal of the individual capacity claims against all of the named Defendants with the exception of Defendant Harry Arnold. Defendants do not object to the dismissal of the individual capacity claims and have entered an agreed stipulation of dismissal of these individual Defendants. [FN11]

> FN10. Plaintiffs included Defendant Robert Ward in their Motion to Dismiss. By agreement of the parties, memorialized by Order dated May 3, 2001, this Court previously dismissed Robert Ward.

> FN11. Plaintiffs move and Defendants request that the Court dismiss the claims against the individual Defendants under Fed.R.Civ.P. 41(a)(1)(ii). Rule 41(a), however, may not be employed to dismiss fewer than all of the claims against any particular defendant because a voluntary dismissal under this Rule terminates the "action," which comprehends the totality all causes of action asserted against the defendant. Technically, the proper procedural mechanism for a plaintiff to eliminate particular claims lies under Rule 15(a) for amendment of the complaint. *Management Investors v. United Mine Workers of Am.,* 610 F.2d 384, 394-95 (6th Cir.1979). The procedure for, and effect of, an amendment will be the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

same as a voluntary dismissal. Consequently, the choice Rule 41(a) or 15(a), particularly in this case in which all parties have agreed, appears to be inconsequential. *See id.; see also C. Van Der Lely N.V. v. F.Lli Maschio S.n.c., 561 F.Supp. 16, 20 (S.D.Ohio 1982).*

For purposes of this Order, the Court will construe Plaintiffs' Motion as one to amend. Without objection from Defendants, the Motion is GRANTED. The claims for individual liability under 42 U.S.C. § 1983 against Iris Ward, Gregory Haas, William Jones, Janice Leedom, Michael Carroll, Phillip Satterfield and Gary Uhrig are withdrawn. The § 1983 claim will proceed against these Defendants in their official capacities, subject to the following decision on Defendants' Motion for Summary Judgment.

B. *Defendants' Motion for Summary Judgment*

1. *Title IX Claims*

As relevant here, Title IX provides that, "No person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ." 20 U.S.C. § 1681(a). A school district may be liable for damages arising out of its own misconduct. *Davis v. Monroe County Board of Educ., 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).* Under Title IX, a school district may be liable for the harassment of a student if the plaintiff demonstrates: (1) a school district official with authority to institute corrective measures, (2) has action notice of, and (3) is deliberately indifferent to the student's

harassment. *Davis, 526 U.S. at 642; Gebser v. Lago Vista Independent School District, 524 U.S. 274, 304, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).* The Supreme Court has expressly rejected the use of "principles of respondeat superior or constructive notice" for imposing liability on a school district under Title IX. *Gebser, 524 U.S. at 285.*

*5 Defendants do not dispute that they each had the authority to institute corrective measures in response to student sexual misconduct complaints. This element, therefore, is not in issue. Defendants, however, contend that they are entitled to judgment as a matter of law on Plaintiff's Title IX claim because the School District did not have actual notice of, and was not deliberately indifferent to, the teacher's misconduct. Moreover, Defendants maintain that they responded reasonably to the allegations of sexual misconduct by Casey Williams by seeking advice from legal counsel and assigning a full-time aide to Defendant Arnold's classroom.

a.) Actual Notice

[1] Defendants argue that the circumstances of this case do not rise to the level of actual notice of Harry Arnold's purported propensity to sexually abuse Casey Williams particularly because none of the previous allegations against this teacher was ever proven. Further, they contend that the previous allegations of misconduct arising in 1976 and 1990 are too remote in time to provide the type of actual notice required under Title IX. Defendants agree that Paint Valley had actual notice of the prior allegations but that maintain that the allegations did not put them on notice that Arnold would abuse a student in 1999.

The Supreme Court has determined that "a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

damages remedy will not lie under Title IX unless an official has at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser,* 524 U.S. at 289. The Court further concluded that "the response must amount to deliberate indifference to discrimination.... The premise, in other words, is an official decision by the recipient not to remedy the violation." *Id.* In *Gebser,* the Court found that the school district had actual notice of a teacher's inappropriately suggestive comments made during class but concluded this information "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Id.* at 291.

The boundaries of the precise nature of "actual notice" remain relatively uncharted following *Gebser.* In the few years since the Court's decision, the lower courts have probed the issue to determine whether the standard requires actual notice of the precise instance of abuse or whether it entails actual knowledge of at least a substantial risk of sexual abuse. Thus,

> [I]t is clear that actual notice requires more than a simple report of inappropriate conduct by a teacher. On the other hand, the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. Such a high standard would protect school districts from liability whenever a student was abused by a teacher, although the district might have had notice that the teacher had abused other students in the past.
> **\*6** *Doe v. School Administrative District*

*No. 19,* 66 F.Supp.2d 57, 63 (D.Me.1999); *see also* Gordon v. Ottumwa Cmty. School District, 115 F.Supp.2d 1077, 1082 (S.D.Iowa 2000) (actual notice "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. At some point ... a supervisory school official knows ... that a school employee is a substantial risk to sexually abuse children.") (internal citations and quotations omitted); *Massey v. Akron City Board of Educ.,* 82 F.Supp.2d 735, 744 (N.D.Ohio 2000) ("For actual notice to exist, an agent of the school must be aware of facts that indicate a likelihood of discrimination."); *Frederick v. Simpson College,* 149 F.Supp.2d 826, 838 (S.D.Iowa 2001) (actual notice requires "actual notice ... that [the teacher] was at risk of sexually harassing a student."); *Crandell v. New York College of Osteopathic Med.,* 87 F.Supp.2d 304, 320 (S.D.N.Y.2000) ("[T]he institution must have actual knowledge of at least some incidents of harassment in order for liability to attach ... [and must have] possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based.") [FN12]

> FN12. *Contra* Baynard v. Malone, 268 F.3d 228 (4th Cir.2001) (holding that while principal should have been aware of *potential* for abuse based on reports he had received regarding the teacher, nothing indicated the principal was *in fact* aware that a student was currently being abused); *but see* Baynard, 268 F.3d at 239-42 (Michael, J., concurring in part and dissenting in part)("*Gebser* does not require that the appropriate official have actual knowledge of current

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

abuse ... [but rather it] leaves room for an actual notice standard that requires the appropriate official to have actual knowledge of at least a substantial risk of sexual abuse (or discrimination).")

The majority in *Baynard* relied on *Davis v. Monroe County Board of Educ., 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)* as removing all doubt that the actual notice standard requires actual knowledge of current misconduct. Yet, the primary holding of *Davis* is that a school board may be liable under Title IX for student-on-student harassment. Certainly, *Davis* confirms the principle that constructive notice and respondeat superior are not viable theories to impute liability to a school board. Yet, the *Davis* Court was not called upon to address the actual notice standard because it was not at issue in that case.

[2] The Court concludes that *Gebser* does not require that the offending teacher actually committed previous acts of sexual abuse before the school district may be liable for the teacher's misconduct under Title IX. Nor does *Gebser* require that the appropriate official have actual knowledge of current abuse. Rather, the actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to children in the school based on prior complaint of other students. While the complaints may be unsubstantiated by corroborating evidence and denied by the allegedly offending teacher, whether such complaints put the school district on notice of a substantial risk to students posed by a teacher is usually question for the jury. This is particularly true in the case at in which

four students and an eyewitness in 1976 and one in 1990 made similar complaints to those made by the Plaintiff. More plainly:

> Students need not show that the district knew that a particular teacher would abuse a particular student; the plaintiff could prevail in this case, for example, by establishing that the school district failed to act even though it knew that [the offending teacher] posed a substantial risk of harassing students in general. But Title IX liability for sexual harassment will not lie if a student fails to demonstrate that the school district actually knew that the students faced a substantial threat of sexual harassment. In other words, the district can escape liability if it can show "that [it] did not know of the underlying facts indicating a sufficiently substantial danger and that [it was] therefore unaware of a danger, or that [it] knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."

**\*7** *Rosa H. v. San Elizario Indep. School District,* 106 F.3d 648 (5th Cir.1997)(quoting *Farmer v. Brennan,* 511 U.S. 825, 843-44, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

The *Gebser* Court sought to avoid imposing liability on school districts that lack any notice of discrimination in its programs. *Gebser,* 524 U.S. at 289. Actual knowledge of a substantial risk of abuse provides fair and sufficient notice to a school board that it may face liability.

In this case, then, Plaintiffs have adduced evidence that the School Board actually knew that Arnold posed a substantial risk to the students at Twin Elementary School, and to Casey Williams, a student in Arnold's case, in particular. Five students had lodged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

previous complaints about Arnold engaging in highly inappropriate touching of grade school students. The evidence of record is at least in dispute as to whether the School District knew that Arnold posed a risk and whether, in light of that risk, they failed to act to protect the students in his classroom. While the 1976 and 1990 incidents are not close in time, each involved the same teacher allegedly fondling grade school students. The complaints came from four students and then one additional eyewitness student in 1976, and one student in 1990. The teacher was employed by the same district from 1976 until the incidents giving rise to the claims in this case.

Plaintiffs have adduced sufficient evidence to create a genuine issue of material fact as to whether the School Board knew of a substantial risk of abuse in light of prior complaints against Arnold.

b.) Deliberate Indifference

Defendants also assert that no genuine issue of material fact exists with respect to whether the School District acted with deliberate indifference. In order for the School District to be liable for acting with deliberate indifference, Plaintiffs must demonstrate that the School District's "response to the harassment or lack thereof is clearly unreasonable in light of known circumstances." *Davis,* 526 U.S. 648-49. Defendants argue that their response to Casey Williams' allegations was "more than reasonable, and fully appropriate, and was the entire opposite of 'deliberate indifference.' ' (Reply, at 13.)

Plaintiffs, on the other hand, argue that they have presented evidence creating a genuine issue of material fact on the element of deliberate indifference. They maintain that

"where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior." *Vance v. Spencer County Public School District,* 231 F.3d 253, 261 (6th Cir.2000). [FN13] Plaintiffs maintain that the School District had knowledge that its efforts to remediate the conduct at issue here were ineffective, and yet it continued to use the same methods to no avail. They maintain that the Paint Valley Defendants' response to the 1976 and 1990 allegations raise fact issues with respect to deliberate indifference.

> FN13. Defendants argue that *Vance* is distinguishable from the case at bar because it deals with student-on-student harassment where the school district failed to respond to students' continuous harassment of the plaintiff-not any other present or previous students. This distinction does not negate the holding.

**\*8** Defendants focus on the remedial action that they took in response to Plaintiff Casey William's complaint, indicating that they responded meaningfully to the allegations. Plaintiffs claim, however, does not involve allegations concerning the District's conduct *after* the alleged abuse. Plaintiffs complain that, had the District acted appropriately *before* the alleged abuse, the student would not have been subjected to misconduct.

Defendants maintain that it "could not have known that Casey Williams was at substantial risk of being sexually abused by Defendant Arnold [because] Casey had only been in Defendant's classroom for a short period of time, as he was new to the school" and that the prior allegations could not possibly create a genuine issue of material

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fact because the 1976 and 1990 allegations "were unsubstantiated, never proven, fully investigated, [FN14] and there had been no allegation in the nine years prior to Casey Williams moving to the School District." (Mem. in Support, at 10, Reply 14-15.)

> FN14. The issue of whether the previous allegations were "fully investigated" appears to be in dispute. Plaintiffs point out that the School Board members in 1976 testified that the complaints in that year were not reported or investigated by the Sheriff's Department. The school's internal investigation of the four boys' complaints involved the principal interviewing the boys and asking teachers if they had seen anything. Further, Plaintiffs point out that the only document generated from the full investigation of Cory Manion's allegations in 1990 is a one-page document summarizing Manion's claims.

In describing the proof necessary to satisfy the standard, the Supreme Court has stated that a plaintiff may demonstrate deliberate indifference only where the school district's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis, 526 U.S. at 648*. Although no particular response is required and the school district is not required to eradicate all forms of sexual harassment, the school district must respond and must do so reasonably in light of the known circumstances. *Vance, 231 F.3d at 261*. In *Vance,* the defendant-school district argued essentially that as long as it had done "something" in response to the harassment of a student, it had satisfied the standard. The Sixth Circuit expressly rejected this

theory noting that this interpretation of deliberate indifference would permit a school district to satisfy its obligations by "merely investigating and absolutely nothing more. Such a minimalist response is not within the contemplation of a reasonable response." *Id.* at 260. Thus,

> where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.

*Id.* at 261. [FN15]

> FN15. In *Vance,* the Sixth Circuit Court of Appeals examined that type of conduct that satisfies the deliberate indifference standard. The Sixth Circuit analyzed several cases in which the courts have permitted cases to go to a jury on the issue of deliberate indifference, including *Davis,* 526 U.S. 633-35 (lack of response could suggest "deliberate indifference on the part of the Board, which made no effort whatsoever either to investigate or to put an end to the harassment."); *Murrell v. School District No. 1,* 186 F.3d 1238, 1243 (10th Cir.1999) (upholding plaintiff's claim of deliberate indifference when school did not inform law enforcement, investigate, nor discipline the offending student); *Wills v. Brown University,* 184 F.3d 20, 25 (1st Cir.1999) (elaborating on the deliberate indifference standard noting that "[i]f the institution takes

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment. Of course, if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability."); *Doe v. School Admin. District No. 19, 66 F.Supp.2d 57, 60-64 (D.Me.1999)* (holding that a jury could find the school district's response was unreasonable in light of known circumstances).

[3] Here, the evidence of record demonstrates that Defendants twice told Defendant Arnold to leave his door open during class and not to be alone with students. No evidence has been presented that the Paint Valley Defendants followed up [FN16] to ensure that Defendant Arnold adhered to these directives.

> FN16. The evidence is in dispute regarding the measures that the School District took to follow-up and to ensure that its directives were being followed during the school years in which students complained. The record, however, is completely devoid of any evidence indicating that the School District took any action to monitor the situation with Mr. Arnold during the school years in which students did not lodge complaints. The protective measures that the school put into place following the 1990 event involving Cory Manion directing Arnold not to be alone with a student, not to keep his students in alone during recess, and to leave his classroom door open (Newman Aff.)--no longer were followed by 1999 when Mr. Arnold was left alone with Casey Williams.

Plaintiffs have adduced sufficient evidence including evidence relating to Defendants' response to the 1976 and 1990 allegations against Harry Arnold to preclude summary judgment as to the deliberate indifference element for Casey Williams' 1999 claims. A reasonable jury could conclude that when Defendants received notice of Cory Manion's sexual misconduct complaint in 1990, it knew its response to the 1976 allegations against Arnold had been ineffective. Further, no evidence exists in the record before the Court indicating that any protective measures or procedures for students or staff to follow to gain such protection were in place with respect to Defendant Arnold's class at the time of the alleged incidents involving Plaintiff Casey Williams in the 1999 school year. On this basis, a reasonable jury could conclude that Defendants' remedial action again was ineffective.

*9 The standard itself, however, which calls for a determination of whether "response to the harassment or lack thereof is clearly unreasonable in light of known circumstances," *Davis, 526 U.S. at 648-49,* does not lend itself well to a determination by the Court on summary judgment. Of course, in appropriate cases, a court may determine as a matter of law that conduct is not "clearly unreasonable." *Vance, 231 F.3d at 260* (citing *Gant v. Wallingford Board of Educ., 195 F.3d 134 (2d Cir.1999)*). Given the state of the record here, the Court cannot determine as a matter of law that the School District responded reasonably in light of the known circumstances. While Defendants' arguments may very well persuade a reasonable jury, the Court concludes that the Plaintiffs here have advanced some evidence to create a genuine issue of material fact as to the existence of deliberate indifference.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Vance,* 231 F.3d at 260-61. Accordingly, summary judgment must be DENIED.

2. *Plaintiffs' claims under* 42 U.S.C. § § 1983 *and* 1985(3)

a.) 42 U.S.C. § 1983

Plaintiffs assert a claim under 42 U.S.C. § 1983, which provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. A student's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects against abusive governmental power as exercised by a school. *Doe v. Claiborne County Board of Educ.,* 103 F.3d 495, 506 (6th Cir.1996).

In order to proceed on a § 1983 claim against a school district, a plaintiff must show with sufficient evidence that there has been a deprivation of a constitutional right and that the school board is responsible for that violation. See *Claiborne County,* 103 F.3d at 505. A school board will not be responsible on a theory of respondeat superior. Thus, the plaintiff must show that the school district itself is the wrongdoer. *Id.* at 507. A school board will be liable under § 1983 if "an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected

right." *Id.* (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The custom must be permanent and well settled so as to constitute a custom or usage with the force of law. *Id.*

Plaintiffs assert that Defendants have a custom or policy of inaction to complaints of sexual abuse against teachers. In other words, Plaintiffs claim that the custom of the School District was to fail to act to prevent the sexual abuse.

**\*10** In the years since *Claiborne County,* however, the law regarding liability of a board of education for sexual abuse in its school system has evolved. In the context of Title IX, the Supreme Court clarified in *Gebser* and *Davis* that it was "employing the 'deliberate indifference' theory already used to establish municipal liability under ... § 1983...." *Davis v. Monroe County Board of Educ.,* 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (quoting *Gebser v. Lago Vista Indep. School Dist.,* 524 U.S. at 290-91 (citations omitted)). [FN17] Here, the Court already has determined that Plaintiffs have advanced some evidence to create a genuine issue of material fact as to the existence of deliberate indifference with respect to their claim under Title IX. The Court therefore concludes likewise that questions of fact remain, under the deliberate indifference standard, for Plaintiff's claim under § 1983.

> FN17. In its analysis of deliberate indifference, the Supreme Court noted that a school board "is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination ... Title IX '[u]nquestionably ... placed on [the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Board] the duty not' to permit teacher-student harassment in its schools ... and recipient violates Title IX's plain terms when they remain deliberately indifferent to this form of misconduct." *Davis,* 526 U.S. at 643 (quoting *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

b.) 42 U.S.C. § 1985(3)

[4] To sustain a cause of action under 42 U.S.C. § 1985, Plaintiffs must demonstrate:
(1) a conspiracy;
(2) formed for the purpose of depriving another of equal privileges or immunity;
(3) an act or furtherance of the conspiracy committed or caused to be committed by a conspirator; and
(4) that he or she was injured and deprived of a right or privilege of a United States Citizen.
*See Griffin v. Breckenridge,* 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Plaintiffs must prove the existence of a conspiracy among "two or more persons." *Hull v. Cuyahoga Valley Joint Vocational School District Board of Educ.,* 926 F.2d 505, 509 (6th Cir.1991). The general rule in civil conspiracy cases is that a corporation cannot conspire with its own agents or employees. *Doherty v. American Motors Corp.,* 728 F.2d 334, 339 (6th Cir.1984). The "intra-corporate conspiracy" doctrine makes clear that a "corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull,* 926 F.2d at 509. Moreover, the Sixth Circuit has determined that different employees and agents of the school district cannot form a conspiracy because they are all members of the same collective entity. *Id.* at 510.

Plaintiffs argue that they have created a genuine issue of material fact regarding whether the Defendants fall within the "scope of employment" exception to the intra-corporate conspiracy doctrine. That exception, Plaintiffs point out, "recognizes a distinction between collaborative acts done in the pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson v. Hill & Dales General Hosp.,* 40 F.3d 837 (6th Cir.1994). Plaintiffs cite to *Bremiller v. Cleveland Psychiatric Institute,* 879 F.Supp. 782 (N.D.Ohio 1995) in which the court found that the defendants' conspiracy to destroy documents relating to plaintiff's sexual harassment complaint fell outside the scope of their employment. Plaintiffs argue that the School District and the Board attempted to "cover up" the allegations against Arnold in a conspiracy to deprive them of their civil rights because the Defendants could not produce documents relating to the 1976 and 1990 sexual misconduct allegations.

*11 Plaintiffs have adduced no evidence that the Paint Valley Defendants were attempting to "cover up" the allegations against Mr. Arnold. The evidence in fact is inconsistent with that argument in that no showing has been made that any Defendant attempted to conceal or destroy evidence. That being the case, there is no reason to depart from the general intra-corporate conspiracy doctrine as set forth in *Hull.* Defendants are therefore entitled to summary judgment on Plaintiffs' claims under § 1985(3). Defendant's Motion on this claim is therefore GRANTED.

3. *Plaintiffs' State Law Claims*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a.) Immunity

 A school district is a "political subdivision" as defined by Ohio Revised Code § 2744.01(F). A school district is immune and not liable for any act or omission of the political subdivision or an employee of the political subdivision, with several statutory exceptions. Specifically, "... a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." O.R.C. § 2744.02(A)(1). Plaintiffs assert that their claims fall squarely into one of the exceptions to immunity set forth at Ohio Rev.Code § 2744.02(B)(4), which provides "... political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of the buildings that are used in connection with the performance of a governmental function."

 Defendants maintain that this exception does not apply to the circumstances of this case. They maintain that the provisions at Ohio Revised Code § 2744.02(B)(4) create an exception to immunity only with respect to negligent maintenance of a governmental building. This theory finds some support in Ohio case law. A closer review of Ohio law, however, reveals a clear split of authority regarding this issue. See Massey v. Akron City Board of Educ., 82 F.Supp.2d 735, 748 (N.D.Ohio 2000) (analyzing split of authority on issue of scope of O.R.C. § 2744.02(B)(4) exception to immunity, ultimately rejecting restrictive view limiting exception to instances of negligent maintenance and determining that liability

may be imposed on political subdivision for negligence of employees that occurs on the grounds of building).

 In Marcum v. Talawanda City Schools, 108 Ohio App.3d 412, 670 N.E.2d 1067 (12th Dist.1996), a student brought an action against a school district after being assaulted by other students, claiming that a teacher had been negligent in leaving a meeting unattended. The Court of Appeals found that the exception to the general rule of non-liability established by § 2744.02(B)(4) was satisfied and allowed the case to go forward. Similarly, in Williams v. Columbus Board of Educ., 82 Ohio App.3d 18, 610 N.E.2d 1175 (10th Dist.1992), three male students physically and sexually assaulted the plaintiff in a classroom. The Court of Appeals for Franklin County allowed the case to go forward, finding the injury occurred in the school building, which is a building used in connection with the performance of a governmental function, within the meaning of § 2744.02(B)(4). See also Sims v. Cleveland Municipal School District, No. 79785, 2002 WL 832485, unreported (Ohio Ct.App. 8 Dist., May 2, 2002) (holding that student stated a claim under the exception to political subdivision immunity, for injury caused by negligence of employees occurring within or on the grounds of buildings used in connection with performance of governmental function).

 *12 Other Ohio courts of appeal have found that § 2744.02(B)(4) only applies to the maintenance of governmental property. See, e.g., Zellman v. Kenston Board of Educ., 71 Ohio App.3d 287, 593 N.E.2d 392 (11th Dist.1991); Doe v. Jefferson Area Local School District, 97 Ohio App.3d 11, 646 N.E.2d 187 (1994) (school board is immune from negligent hiring and supervision

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims); *Hubbard v. Canton City School Board of Educ.,* No.2000CA00313, 2001 Ohio App. LEXIS 1619, unreported (Ohio Ct.App. 5 Dist. March 30, 2001); *Workman v. Franklin County,* No. 00 AP-1449, 2001 Ohio App. LEXIS 3818, unreported (Ohio Ct.App. 10 Dist., Aug. 28, 2001).

[5] Without the benefit of clear direction from the Ohio Supreme Court, [FN18] this Court must determine which of the lines of authority from the state courts is more persuasive. *Massey,* 82 F.Supp. at 748. After due consideration, the Court concludes that the cases holding that school districts are not immune to be more persuasive. The plain meaning of the statute specifies that political subdivisions are liable for negligence occurring within or on the grounds of the relevant government building. The Defendants' argument for an interpretation going beyond the plain terms of the statute is not persuasive.

> FN18. The Ohio Supreme Court accepted a discretionary appeal and certified a conflict on this issue, but then *sua sponte* dismissed the appeal as having been improvidently granted. *See Hubbard v. Canton City School Board of Educ.,* 88 Ohio St.3d 14, 722 N.E.2d 1025 (2000). Thus, the question as to whether O.R.C. § 2744.02(B)(4) applies only to negligence occurring in connection with the maintenance of school property or to physical defects within or on the property remains unanswered by the Ohio Supreme Court.

[6] The individually named Paint Valley Defendants also contend that they are entitled to immunity pursuant to O.R.C. § 2744.03(A)(6). Under § 2744.03(A), the Board employees have immunity to tort liability in connection with a governmental function unless his or her acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities or were with malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, Plaintiffs can succeed only if they can show the Board employees acted with malice, in bad faith, or in a wanton or reckless manner. On the facts presented for purposes of this Motion for Summary Judgment, the Court finds there is sufficient evidence to raise a genuine issue of material fact whether the Board employees so acted.

b.) Negligent Retention

[7] Defendants maintain that they are entitled to summary judgment on Plaintiffs' claim of negligent retention. They point out that Plaintiffs must demonstrate that an employee's misconduct was foreseeable in order to state a claim for negligent retention. *See Dawson v. Airtouch Cellular,* 42 F.Supp.2d 767, 771 (S.D.Ohio 1999); *Byrd. v. Faber,* 565 N.E.2d 584, 57 Ohio St.3d 56 (1991). In *Stephens v. A-Able Rents, Co.,* 101 Ohio App.3d 20, 654 N.E.2d 1315 (1995), the Ohio Court of Appeals adopted the formulation in *Byrd* as the standard for negligent hiring in all cases, stating, "[t]he primary issue in a negligent hiring case is whether the employer knew of should have known of the employee's criminal or tortious propensities." *Id.* at 25, 654 N.E.2d 1315, 101 Ohio App.3d 20, 654 N.E.2d 1315. *Stephens* stands for the proposition that:

> the plaintiff must focus the inquiry on the employer and not on what the employee did. If the plaintiff shows facts indicating the employee had a past history of criminal or tortious conduct about which the employer knew or should have known,

summary judgment is improper and a question of fact is raised.... The relevant inquiry is whether facts existed that the employer should have known about, which facts would have prevented the employment relationship.

**\*13** Id. at 26, 654 N.E.2d 1315.

Defendants argue that they are not liable for negligent hiring or retention of Mr. Arnold because they lacked knowledge that he had "a history of criminal, tortious, or otherwise dangerous conduct abut which the [the district] knew or could have discovered through reasonable investigation." Byrd, 57 Ohio St.3d at 61, 565 N.E.2d 584. They assert that they could not have known that Arnold had such propensities because the 1976 and 1990 allegations against him were unsubstantiated and therefore not conclusive of criminal or tortious disposition.

Plaintiffs' claim for negligent retention, in the context of the facts presented here, essentially means that the School Board should have fired Defendant Arnold and that Defendants were therefore negligent in retaining him after receiving complaints of his sexual inappropriateness towards the students. Here, the Court has concluded that Defendants had knowledge that Arnold created a substantial risk of abuse towards the students. In other words, the School District was on notice of prior complaints, but did not specifically know that Arnold actually committed sexual offenses towards his previous students. The students had made accusations which Arnold denied. This assessment, however, does not compel a corresponding conclusion that Defendants knew that Arnold had "a history of criminal, tortious, or otherwise dangerous conduct" such that the School District should have or would have been justified in firing Defendant Arnold.

The record demonstrates that Defendant Arnold was never an at-will employee but instead operated under the protections of a collective bargaining agreement and was also subject to the provisions of Ohio Rev.Code § 3319.01 et seq. Together, the agreement and the Revised Code require that he not be discharged without just cause, with the burden resting upon the School District to establish such legal justification. While complaints of misconduct may impose a duty on the School Board to have heightened concern about Defendant Arnold being around students, such complaints may not justify termination of an employee with contractually and legally protected employment rights. Accordingly, Defendants' Motion for Summary Judgment is GRANTED with respect to the claim of negligent retention.

c.) Assault and Battery

[8] The Paint Valley Defendants maintain that they are not liable for the alleged assault and battery committed by one of its employees, Defendant Arnold, against one of its students, Casey Williams. Defendants point out that an employer is only liable under the doctrine of respondeat superior if the employee's conduct was committed within the scope of employment. Byrd v. Faber, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). Defendants argue that they are not liable for Defendant Arnold's alleged sexual abuse of Plaintiff because Arnold's acts of misconduct were outside the scope of his employment.

The intentional acts of assault and battery are outside the scope of employment unless the employee's actions were "calculated to facilitate or promote the business for which he was employed." Byrd, 57 Ohio St.3d at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

58, 565 N.E.2d 584. "[A]n employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Id. at 59, 565 N.E.2d 584*. An employer "in no way promotes or advocates non-consensual sexual misconduct." *Id. at 59-60, 565 N.E.2d 584*.

**\*14** Citing to the Restatement (Second) of Agency § 219(2)(d), [FN19] Plaintiffs argue that Arnold's employment aided in accomplishing the tort because he held a position of authority over the target of his abuse. Yet, Ohio courts have routinely held that employers are not liable for the intentional tort of assault and battery under respondeat superior theory in cases involving sexual misconduct by an employee. *E.g., Byrd, 57 Ohio St.3d at 59-60, 565 N.E.2d 584; Svydlowski v. Ohio Dept. of Rehab. & Corr., 79 Ohio App.3d 303, 607 N.E.2d 103 (Ohio Ct.App. 10 Dist.1992).*

> FN19. That section provides that "[a] master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless ... he was aided in accomplishing the tort by the existence of the agency relation."

The Court finds that Defendant Arnold's sexual misconduct against Casey Williams, if proven, was outside the scope of his employment with the School District and did not in any way promote the business of his employer. Plaintiffs point to no binding or persuasive authority that would compel the Court to depart from this general principle in the context of the student-teacher relationship. Accordingly, Defendants' Motion for Summary Judgment as to this claim for assault and battery is GRANTED.

d.) Negligent and/or Intentional Infliction of Emotional Distress

Defendants maintain that they are immune from liability for Plaintiffs' claim of negligent infliction of emotional distress. For the reasons set forth above, however, the Court concludes that Defendants are not immune from Plaintiffs' claims arising from negligence. In all events, Plaintiffs do not appear to assert a claim for negligent infliction of emotional distress and instead proceed on a theory of intentional infliction of emotional harm. [FN20]

> FN20. The Ohio Supreme Court has held that a recovery for negligent infliction of emotional distress is limited "to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." *High v. Howard, 64 Ohio St.3d 82, 85-86, 592 N.E.2d 818, 821 (1992),* overruled on other grounds in *Gallimore v. Children's Hosp. Med. Ctr., 67 Ohio St.3d 244, 617 N.E.2d 1052 (1993). See also Gearing v. Nationwide Ins. Co. , 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1119-1120 (1996)* (stating that parents have no cause of action for negligent infliction against person who molested their child as they were not bystanders to an accident, nor did they fear physical consequences to their own persons); *Audia v. Rossi Bros. Funeral Home, Inc., 140 Ohio App.3d 589, 593, 748 N.E.2d 587, 589-90 (2000)*(discussing cases). Here, Plaintiffs do not appear to assert a claim for negligent infliction as evidenced by the wording of the claim in the Complaint limiting the cause of action to Defendants'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conduct that was purportedly "reckless and outrageous." (Complaint, ¶ 54). Further, Plaintiffs only address their claim as one for intentional infliction in their Memorandum in Opposition. (Memo. in Opp., at 35-36.) Accordingly, the Court construes Count VII of Plaintiffs' Complaint as one for intentional infliction of emotional distress only.

[9] Under Ohio law, " '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." ' *Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983)* (citation omitted). The Ohio Supreme Court has described conduct that is "extreme and outrageous":

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Yeager, 6 Ohio St.3d at 374-75, 453 N.E.2d at 671* (citations omitted).

Defendants argue that they simply have not acted in a way which is extreme and outrageous. They argue that Plaintiffs did not complain to them or any school official about the misconduct of Defendant Arnold and that once they were made aware by the Sheriff's Department, they contacted legal counsel for advice. Defendants note that they placed a teacher's aide in Defendant Arnold's classroom and otherwise "responded to Plaintiffs' allegations in every way possible" such that liability for intentional infliction of emotional distress should not be imposed. (Mot. for Sum. Jgdmt., at 22.) Plaintiffs, on the other hand, maintain that Defendants are not entitled to summary judgment on their claim of intentional infliction of emotional distress because they have presented genuine issues of material fact as to whether Defendants' conduct was outrageous.

**\*15** The Court finds that Plaintiffs have not raised any issue of material fact to overcome the high standard for extreme and outrageous behavior with respect to their intentional infliction of emotional distress claim. Furthermore, Plaintiffs have presented no evidence indicating that either has suffered from extreme emotional distress. The Ohio Supreme Court has defined serious emotional distress: "By the term serious, we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury that is both severe and debilitating ... A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983).* Courts applying Ohio law have sought some evidence showing hospitalization or medical treatment with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regard to a diagnosable psychiatric condition. *See, e.g., Katterhenrich v. Federal Hocking Local School District Board of Educ., 121 Ohio App.3d 579, 700 N.E.2d 626, 633-34 (1997).*

Other than an affirmative statement in the Complaint that they have suffered severe emotional distress, Plaintiffs have not come forth with any evidence to describe serious emotional injury. Accordingly, Defendants' Motion for Summary Judgment on this claim is GRANTED.

e.) Invasion of Privacy

[10] The Supreme Court of Ohio has recognized a claim for invasion of privacy stemming from the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering to a person of ordinary sensibility. *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (1956). In *Suston v. Fee,* 69 Ohio St.2d 143, 145, 431 N.E.2d 992 (1982), the Ohio Supreme Court adopted the Restatement of Law (Second), Tort's (1965) 378, § 652B in assessing the scope of this type of tort relating to invasion of privacy. That provision states in full: "One who *intentionally* intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Id.* (citations omitted) (emphasis added).

Plaintiffs' claim against Defendants for invasion of privacy arises out of theories of vicarious liability stemming from Defendant Arnold's conduct. Plaintiffs assert that "[t]here is no question that Plaintiffs' allegations against Arnold, if true, constitute a state law claim for invasion of privacy."

(Memo. in Opp., at 36.) Plaintiffs argue that their claim for invasion of privacy against the Paint Valley Defendants should survive under the same theory of respondeat superior as set forth with respect to their claim of assault and battery.

The Court has already determined that Arnold's alleged sexual abuse, if proven, was outside the scope of his employment. Plaintiffs' invasion of privacy claim stems from that same intentional conduct on the part of Defendant Arnold. Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims for invasion of privacy is GRANTED.

f.) Plaintiff Sarah Hart's Loss of Consortium Claim

**\*16** [11] The remaining claims in this case arise under Title IX and § 1983. In the Sixth Circuit, 42 U.S.C. § 1983 does not reach Plaintiff Hart's state claim of loss of consortium. *Stallworth v. City of Cleveland,* 893 F.2d 830, 838 (6th Cir.1990). The statute provides redress to a party suffering injuries from a deprivation of any rights, privileges or immunities secured by federal law. Plaintiff Hart's claim for loss of consortium arises from her emotional distress, loss of companionship and society of her son, Casey Williams, based on such a deprivation. Plaintiff Hart's loss of consortium claim does not represent an injury based on a deprivation of her rights, privileges or immunities. Therefore, the text § 1983 does not reach her claim. [FN21]

> FN21. The issue is more complex regarding whether a claim under § 1983 survives as to a relative's loss of companionship in a wrongful death situation. *See Kelly v. Wehrum,* 956 F.Supp. 1369, 1373-74

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(S.D.Ohio 1997) ("To hold that a person who commits an unconstitutional act under the authority of state law directly causing the death of another may not be sued under § 1983 solely because the wronged party is now dead would emasculate the statute.")

No authority exists for the proposition that Plaintiff Hart may bring a loss of consortium claim based on an underlying violation of Title IX. The Court is disinclined to find that such a remedy exists under that statute, particularly when the courts have determined that no such remedy exits for civil rights violations under § 1983. This conclusion is further supported by the contractual nature of Title IX. *Davis,* 526 U.S. at 639-40. Finally, remedies available under Title IX can be no greater than those recoverable under § 1983. *Id.* Defendants' Motion for Summary Judgment is therefore GRANTED on Plaintiff Hart's loss of consortium claim.

4. *Punitive Damages*

[12] Finally, Defendants argue that punitive damages are not permitted against a political subdivision as a matter of law, citing and 42 U.S.C. § 1981(a)(b)(1). The Court notes that the remaining claims in this matter as against the Paint Valley Defendants are for violations of Title IX and § 1983.

Title IX mentions no remedies. The contractual nature of Title IX, however, has implications for the construction of the scope of available remedies. *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 287, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). Punitive damages, unlike compensatory damages and injunctions, are generally not available for breach of contract. *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 2102-03, 153 L.Ed.2d 230 (2002). In *Barnes,* using an analysis of Title VI, similar to that employed in *Davis* to Title IX, the Supreme Court has held that punitive damages may not be awarded against a public body.

Further, the Supreme Court has held that punitive damages are not available against a municipality under § 1983. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 260 n. 21, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (explaining policy reasons disfavoring municipal liability for punitive damages). Public school districts are similar political entities. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 705, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). It follows that Plaintiffs may not be able to recover punitive damages against the School District or the Defendants in their official capacities under § 1983. *See also Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)(exploring policy reasons disfavoring punitive damages against municipalities and distinguishing policy implications in context of liability for actions taken in individual capacities). Defendants' Motion with respect to Plaintiff's claim for punitive damages is GRANTED.

IV.

*17 For the foregoing reasons, Plaintiffs' Motion to Dismiss Individual Capacity Suit Under 42 U.S.C. § 1983 (Doc. # 67) is GRANTED. Defendants' Motion for Summary Judgment (Doc. # 61) is GRANTED IN PART AND DENIED IN PART, to wit: Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims under Title IX and 42 U.S.C. § 1983 is DENIED; with respect to Plaintiffs' claims for violations of 42 U.S.C. § 1985(3), Plaintiffs' state law claims of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

negligent retention, assault and battery, intentional infliction of emotional distress and invasion of privacy, Plaintiff Sarah Hart's claim for loss of consortium and Plaintiffs' claim for punitive damages, Defendants' Motion is GRANTED. This matter shall proceed to trial against the Paint Valley Defendants with respect to the Title IX and § 1983 claims and against Defendant Arnold for all claims presented against him in Plaintiffs' Amended Complaint.

  IT IS SO ORDERED.


**Motions, Pleadings and Filings (Back to top)**

•         2:01cv00004        (Docket) (Jan. 03, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.