JANE DOE, et al.                )
                                )
v.                              )        No. 3:04-0143
                                )        Magistrate Judge Brown
STEVEN CRAIG FULTS, et al.      )        **Jury Demand**


# M E M O R A N D U M

## I.  INTRODUCTION

Pursuant to the consent of the parties and the Order of
District Judge Echols (Docket Entry Nos. 48, 51), this matter is
before the undersigned for all further district court
proceedings.  Currently pending in this civil action is
Defendants Rutherford County Board of Education ("RCBE") and Judy
Goodwin's motion for summary judgment (Docket Entry No. 94) on
all plaintiff's claims, including § 1983 claims, ADA claims, and
negligence claims against RCBE and a claim of negligent
supervision on the part of Defendant Judy Goodwin.  This motion
is supported by memorandum (Docket Entry No. 96) and, pursuant to
Local Rule 8(b)(7)(b), a statement of material facts not in
dispute (Docket Entry No. 97).  The plaintiffs have filed a
response to the defendants' motion for summary judgment (Docket
Entry No. 103), which is supported by memorandum (Docket Entry
No. 106) and plaintiffs' response and rebuttal facts to
defendants' statement of undisputed facts (Docket Entry No. 104).
The defendants have also filed a reply to plaintiffs' response to

1

the motion for summary judgment (Docket Entry No. 110).  As discussed below, the Court finds that the motion for summary judgment should be **GRANTED** in part and **DENIED** in part.  The Court will grant summary judgment on the federal claims against RCBE and Goodwin and dismiss those claims with prejudice, but deny summary judgment on the pendent state law claims, which will be dismissed without prejudice as the Court declines to continue to exercise supplemental jurisdiction over them.

## II.  BACKGROUND

At all times pertinent to the issues at bar, Plaintiff John Doe was a student enrolled in the Rutherford County school system.  It is undisputed that an illicit relationship occurred between Doe (a minor) and Defendant Steven Craig Fults, a teacher in the Rutherford County school system.  Between 1998 and 2000, Doe attended seventh and eighth grades at Barfield Elementary School (John Doe Dep. at 49), where Defendant Steven Craig Fults taught seventh grade during Doe's eighth-grade year (Fults Dep. at 45-46).

Although Fults was not Doe's teacher at Barfield, Doe's homeroom was located across the hall from Fults's classroom during the 1999-2000 school year (Fults Dep. at 45, 61-62).  Doe and a friend would go to Fults's classroom during the silent reading period at the end of the day because "[Fults] never made

2

the kids read or anything...[they would] go to [Fults'] room and just hang out" (John Doe Dep. at 49-50).  Fults coached soccer at Barfield, and Doe participated in tryouts for the team but was refused after he received disciplinary action at the school (John Doe Dep. at 52-53, Fults Dep. at 46).  There was no other significant interaction between Doe and Fults during the 1999-2000 school year.

After Doe graduated from Barfield, he enrolled at Riverdale High School, also in Rutherford County (John Doe Dep. at 64). The record reflects that Doe and Fults resumed communication when Fults presented Doe with the opportunity to earn money by providing assistance with the soccer team and cleaning/organizing Fults's classroom (Fults Dep. at 63-64, 84-86; John Doe Dep. at 64-70).  The two ultimately agreed that Doe would clean and rearrange the classroom on Saturdays, and that Doe would work the concession stand during the soccer games.  (Id.).  It is not clear when the illicit conduct perpetrated on Doe began, but it is undisputed that Fults committed his first illicit act on Doe when Doe was 15 years old (Fults Dep. at 90-94; John Doe Dep. 85-90).

The record further reflects that around this time, Fults disclosed to his principal, Defendant Judy Goodwin, that he was homosexual and that he had been dating a 19-year-old Middle Tennessee State University student (Goodwin Dep. at 59-60).  Both

3

Fults and Goodwin testified that at no time was there ever an indication that Fults was in fact referring to his illicit relationship with Doe (Id.; Fults Dep. at 178-179). Other than this misleading disclosure, the evidence is undisputed that the illicit ongoing relationship between Fults and Doe was never disclosed to or discovered by any RCBE administrator, teacher, or employee.

However, plaintiffs in this case have alleged that there were at least two distinct sets of indications which should have led RCBE to refuse to hire Fults, or to remove or otherwise restrain him. The first indication relates to information regarding Fults's prior employment with Dekalb County and his reasons for resignation, and the second set of indiciations relate to complaints lodged against Fults which plaintiffs allege RCBE failed to act upon.

Prior to Fults's employment with Rutherford County, he was employed as a seventh grade teacher for Dekalb West Elementary School (Fults Dep. at 44). During the course of his employment, an issue arose regarding Fults's computer usage (England Dep. at 13-17, 22-26). It seems that Fults likely used a computer to access pornographic materials of a homosexual nature, though the investigation by the sheriff's department revealed "nothing illegal" (Parkerson Dep. at 16-26). Fults nonetheless resigned, effective at the end of the 1998-1999 school year (Fults Dep. at

4

45, 51-53). In 1999, Fults sought employment in Rutherford
County, and was hired into Barfield Elementary by then-principal
John Calton.

The Rutherford County screening process at the time required
the applicant to interview with the school principal, and it was
then the responsibility of the principal to check the applicant's
references and review previous experience in the attached
application (Tune Dep. 16-17). The applicants were required to
indicate whether they had ever been convicted of a misdemeanor or
felony, and whether they had ever been dismissed from any
teaching position for any of the reasons set forth in the
pertinent sections of the Tennessee Code Annotated. (Id.; Calton
Dep. at 16). During the course of checking Fults's references,
Calton called Danny Parkerson, principal of Dekalb West and
Fults's previous supervisor (Calton Dep. at 24-31, Parkerson Dep.
at 45-47). While it is disputed just what Parkerson told Calton
regarding Fults, it is undisputed that the actual investigation
into Fults's computer usage was never revealed. Other than this
disputed fact regarding what was intimated during this reference
call, plaintiffs have not alleged that RCBE did anything to
violate its then-standing hiring and screening policies, and have
not alleged any specific additional procedures or policies that
would have revealed Fults's dangerous propensities.

Defendant Judy Goodwin replaced Calton as principal at

5

Barfield in 2000, after Doe was no longer a student there
(Goodwin Dep. at 15, 59). Goodwin testified that she first
learned of the illicit relationship between Doe and Fults on
April 2, 2003, after Fults was witnessed bringing lunch to Doe
and another student during school hours at Riverdale High
(Goodwin Dep. at 60-61). However, Plaintiffs assert that Goodwin
had several occasions to know of, or at least to suspect,
inappropriate conduct on the part of Fults that would either have
prevented or mitigated the injuries suffered by Doe. This
evidence does not relate specifically to Doe, but to other
complaints lodged against Fults and other questionable actions by
Fults which Goodwin had occasion to witness.

These additional opportunities for suspicion or
investigation into Fults include the assertion that Fults and Doe
could have been seen together in the sound booth at school dances
(Scott Culp Dep. at 21-22), the allegation that Goodwin often
showed favoritism to Fults on a number of unrelated issues
pertaining to discipline or appropriate oversight (Jenny Culp
Dep. at 25-27), and the assertion that rumors related Fults'
computer usage in Dekalb County were circulating among Barfield
staff (Id. at 20-21). Plaintiffs also assert that Goodwin was
notified of Fults's propensity towards inappropriate conduct by a
teacher whose classroom was adjacent to Fults's – specifically
that Fults was witnessed hand-feeding male students potato chips

6

in the hallway while refusing to feed female students, Fults would keep his soccer team in his room with the door closed, Fults was witnessed picking up one his players and kissing him on the forehead, and that Fults seemed to favor and give more attention to male students than female (Id. at 14-19).

In addition to the specific factual evidence regarding Fults, plaintiffs also rely heavily on the deposition testimony of Gail Tune in attempting to establish illegal customs on the part of RCBE and Goodwin.  Tune, an RCBE assistant superintendent, discusses the 46 other incidents of inappropriate conduct on the part of teachers investigated in the past eight years in Rutherford County.  This testimony includes both the substance of the investigations and RCBE's responses.

### III.  DISCUSSION

A.  <u>Summary Judgment Standard of Review</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A "genuine issue of material fact" is one that would change the outcome of the litigation – factual disputes that are irrelevant or unnecessary

7

will not be counted.  _Anderson v. Liberty Lobby_, 477 U.S. 242, 247 (1986).

In order to defeat a motion for summary judgment, the nonmoving party may not merely rest on conclusory allegations contained in the complaint, _Celotex Corp. v. Catrett_, 477 U.S. 317 (1986), but must affirmatively demonstrate "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." _Anderson_, 477 U.S. at 249.  For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party.  _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986). However, mere conclusory and unsupported allegations rooted in speculation do not meet the plaintiff's burden to defeat summary judgment; the existence of specific material evidentiary facts must be shown.  _Bryant v. Kentucky_, 490 F.2d 1273, 1275 (6th Cir. 1974).

In adjudicating a motion for summary judgment, the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. _Street v. J.C. Bradford_, 886 F.2d 1472, 1476 (6th Cir. 1989). That is, the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  _Id._  If the evidence fails to raise a genuine issue of

8

material fact with respect to all necessary elements of a prima
facie claim, such that a reasonable jury could not find for
plaintiff on that claim, the defendants are entitled to summary
judgment as a matter of law.

B.  <u>Claims Against Municipal Defendants</u>

*1. Claims Under § 1983*

Plaintiffs claim that RCBE is liable for Fults's violation
of Doe's constitutional rights under the Fourteenth Amendment, in
violation of 42 U.S.C. § 1983.  Under § 1983, a plaintiff may
recover if his constitutional rights are violated by an
individual acting under color of state law.  It is undisputed
here that Defendant Fults's sexual abuse of Doe was in violation
of Doe's right to personal security and bodily integrity, which
right is protected by the substantive component of the Due
Process Clause of the Fourteenth Amendment.  <u>See</u>, <u>e.g.</u>, <u>Doe v.
Claiborne County</u>, 103 F.3d 495, 506-07 (6th Cir. 1996).  It also
appears to be undisputed that Fults was acting under color of
state law.

Having established that Doe's constitutional rights were
violated, plaintiffs must next prove that RCBE was responsible
for that violation.  <u>Id.</u> at 507.  This responsibility cannot stem
solely from RCBE's employment of Fults, as *respondeat superior* is
not an available theory of liability under § 1983; "[r]ather,
[plaintiffs] must show that the School Board *itself* is the

9

wrongdoer." <u>Id.</u> (citing <u>Collins v. City of Harker Heights</u>, 503

U.S. 115, 122 (1992)).  Under <u>Monell v. Dep't of Social Servs.</u>,

436 U.S. 658 (1978), municipal defendants cannot be found liable

for an employee's deprivation of the plaintiff's constitutional

rights unless the plaintiff can establish that an officially

executed policy, or, as alleged in this case, the toleration of a

custom within the municipal entity, caused the constitutional

deprivation.[1]  <u>Monell</u>, 436 U.S. at 690-91.  "In addition to

---

[1]In arguing RCBE's liability under § 1983, plaintiffs first assert that
RCBE had actual notice of a substantial risk of abuse to students at the hand
of Fults by virtue of defendant Goodwin's knowledge, and her status as the
"appropriate official."  Plaintiffs state that

> The Sixth Circuit has held: "Consistent with the majority of other
> courts, this Court finds that the actual notice standard is met
> when an appropriate official has actual knowledge of a substantial
> risk of abuse based on prior complaints by other students."

(Docket Entry No. 106 at 8).  This quotation is followed by an electronic
citation which the Court has not been able to retrieve, and by the notation
that the cited authority is attached to plaintiffs' brief.  However, the cited
material is not attached to plaintiffs' brief, nor does it appear to be
attributable to the Sixth Circuit.  Rather, it appears that this language is
from the district court's opinion in <u>Johnson v. Galen Health Institutes, Inc.</u>,
267 F.Supp.2d 679, 688 (W.D. Ky. 2003), a case involving sexual harassment and
retaliation under Title IX.  In any case, while Goodwin might be an
appropriate official for notice purposes under Title IX, it has not been
alleged for purposes of this § 1983 municipal liability claim that she has
final policymaking authority in any respect, or that any action or inaction on
her part could itself subject RBCE to liability; indeed, plaintiffs argue that
their damages might have been minimized "if Judy Goodwin would have taken
action in compliance with existing policy..." (Docket Entry No. 106 at 13.
Accordingly, this record does not support a finding that Goodwin is a county
"official" whose inaction can be attributed to RCBE for § 1983 purposes.
    Moreover, plaintiffs have not alleged Goodwin's individual, supervisory
liability under the deliberate indifference standard of § 1983, despite
language in their argument regarding RCBE's liability that Goodwin (as an
"appropriate official" of RCBE) "allowed Fults to inappropriately touch male
students without even so much as a reprimand appearing in his file..."
(Docket Entry No. 106 at 9-10).  Rather, plaintiffs have sued Goodwin "in her
capacity as an employee of Rutherford County School System" (Docket Entry No.
79), and have at all times alleged Goodwin's <u>negligent</u> supervision under state
law.  (Docket Entry No. 1 at 9-10; Docket Entry No. 79 at 8-9; Docket Entry
No. 104 at 5).  In any event, any notice to Goodwin of Fults's inappropriate
tendencies or any deficiencies in her response to same have no bearing on the

10

showing that the School Board as an entity 'caused' the
constitutional violation, plaintiff[s] must also show a direct
causal link between the custom and the constitutional
deprivation; that is, [they] must 'show that the particular
injury was incurred because of the execution of that policy.'"
Claiborne County, 103 F.3d at 508 (quoting Garner v. Memphis
Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)).

In this case, the custom which plaintiffs claim to be
responsible for the violation of Doe's rights is a custom of
inaction to prevent sexual abuse.  This custom is allegedly
manifested in two ways: in failing to warn other school systems
which might later hire a teacher of that teacher's abusive
proclivities, and in failing to adequately screen prospective
hires for such proclivities.  The first of these failings is
unavailing to plaintiff in this matter, even if a custom of
failing to warn other school systems could be proved, in that
plaintiffs (Rutherford County residents at all relevant times)
cannot demonstrate that any failure to warn another county's
school system caused plaintiffs' injury, and thus have no
standing to pursue such a claim, nor have they demonstrated the
right to pursue such a claim on behalf of any third parties.
E.g., Kowalski v. Tesmer, 125 S.Ct. 564, 567 & n.2 (2004).  As

claim of RCBE's custom of deliberate indifference to hiring people with
abusive proclivities.

11

regards the alleged failure to adequately screen applicants for
employment, plaintiffs attempt to show a custom by reference to
Defendant Fults's own employment history, and by reference to
evidence of other instances where RCBE employees were the subject
of complaints of inappropriate conduct.

It does not appear that plaintiffs seek to establish that
the hiring of Fults was a discrete action by RCBE which is itself
sufficient, upon an adequate showing of culpability and
causation, to trigger municipal liability.  Rather, plaintiffs
argue that the circumstances of Fults's hiring, along with the
aforementioned 46 other instances of complaints filed against
Rutherford County teachers and employees between 1996 and 2004,
are proof that "[a]lthough RCBE might have reacted to individual
situations, the custom in Rutherford County -- over 46 times --
was to do nothing to address *why* dangerous teachers and employees
were 'slipping through the cracks.'" (Docket Entry No. 106, pp.
11-12).  In order to proceed to trial on this theory of inaction
to improve applicant screening and hiring procedures, plaintiffs
must establish:

    (1)  the existence of a clear and persistent pattern of
         sexual abuse by school employees;
    (2)  notice or constructive notice on the part of the
         School Board;
    (3)  the School Board's tacit approval of the
         unconstitutional conduct, such that their
         deliberate indifference in their failure to act
         can be said to amount to an official policy of
         inaction; and
    (4)  that the School Board's custom was the "moving

12

force" or direct causal link in the constitutional
deprivation.

Claiborne County, 103 F.3d at 508.

The requirement that the alleged pattern of insufficient
screening of applicants constitute a "custom" per Monell is
essential to plaintiffs' "inaction" theory of municipal
liability. Id. Plaintiffs' claim against RCBE will proceed if
their proof of the number and nature of reported incidents and
complaints involving county employees is sufficient to establish
"that the need to act is so obvious that the School Board's
'conscious' decision not to act can be said to amount to a
'policy' of deliberate indifference to Doe's constitutional
rights." Id. (citing City of Canton v. Harris, 489 U.S. 378, 389
(1989)). "'Deliberate indifference' in this context does not
mean a collection of sloppy, or even reckless, oversights; it
means evidence showing an obvious, deliberate indifference to
sexual abuse." Id. "If a plaintiff advances sufficient evidence
to create a genuine issue of material fact as to the existence of
such a custom or policy, then the question of 'deliberate
indifference' is one for the jury to decide and not for the court
at the summary judgment stage." Id. at 509 (citing Hicks v.
Frey, 992 F.2d 1450, 1456-57 (6th Cir. 1993)).

The Court simply fails to find a triable issue from
plaintiffs' proof as to the existence of the custom alleged.
While RCBE was presumably on notice of the investigative and

13

disciplinary actions taken at county schools in the 46 cases cited, it cannot be presumed from this evidence, or even found by a reasonable juror, that there existed in Rutherford County schools "a clear and persistent pattern of sexual abuse by school employees." In reviewing the deposition testimony of assistant superintendent Gail Tune (Docket Entry No. 117, attachment; pp. 63-121), upon which plaintiffs rely, it is clear that of the 46 identified instances involving "sexual misconduct or inappropriate relationships" (id. at 63), at least 10 of them involved only an allegation that a teacher or other school official made inappropriate comments to students. Seven of the 46 investigations involved a single incident in which a teacher's inappropriate comments and touching on the arm, back, or breast of students in class was met with RCBE's suspension of the teacher. At least five of the complaints alleged only that a teacher had placed his or her hand on the back or shoulder of a student and made that student uncomfortable. Other allegations of inappropriate conduct were dismissed by the school system as unsubstantiated because the complainant recanted (id. at 96, 99). At least two other complaints involved employees on school property who had not been screened by RCBE at all, but were either the subject of a contract to be screened by an outside staffing company with the same statutory screening requirements as the school (id. at 81-83), or had been put in place at the

14

school by law enforcement pursuant to the county's Student Resource Officer program (id. at 100).

In short, the summary judgment evidence does not show a persistent pattern of students being sexually abused in violation of their Fourteenth Amendment rights, or that RCBE by its inaction on the hiring front tacitly approved of such conduct. Moreover, the statistics proffered by plaintiffs were compiled over more than eight years in a school district that has numerous schools, roughly 2,100 teachers and 800-900 other employees (id. at 24). Even were it conceded that RCBE was grossly negligent in failing to act to change applicant screening procedures in the face of these complaints, just as in Claiborne County, "[i]t cannot be said ... that their failure to act in [Fults's] case was the direct result of a custom in the sense that the School Board consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." 103 F.3d at 508.

Despite the terrible consequences of Fults's employment by RCBE, the facts surrounding his hiring do not lend any further support to plaintiffs' allegation of a custom of inaction, nor would they suffice to support a claim that the single hiring decision was an unlawful municipal action sufficient to constitute a "policy" per Monell. In order to support a claim under § 1983, such a municipal action must be shown to have been

15

taken with "'deliberate indifference' to its known or obvious consequences." <u>Board of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 407 (1997). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" <u>Id.</u> at 411. Here, even if Fults's viewing of pornographic material on his Dekalb County computer should have been discovered by RCBE, and should have indicated that he was not the most fit candidate for the job, it cannot be said that the viewing of such inappropriate (but not illegal) material leads to the plainly obvious consequence that Fults would sexually abuse the children that he taught. Accordingly, while RCBE might have been negligent with respect to the rights of its students in checking Fults's background, it was not deliberately indifferent, and thus cannot be held liable under § 1983. Moreover, as discussed in the Court's prior memorandum concerning the claims against Dekalb County (Docket Entry No. 63 at 7-11), it would not appear that plaintiffs could establish proximate causation between the hiring of Fults in the summer/fall of 1999 and his abuse of Doe in the summer of 2001. See <u>D.T. v. Indep. School Dist. No. 16</u>, 894 F.2d 1176 (10th Cir.

16

1990).

This is a tragic case, with plaintiffs suffering horribly as a result of the unlawful acts perpetrated by Fults. However, in the absence of sufficient proof to raise a genuine factual issue as to the existence of an official custom or policy which caused the constitutional deprivation, liability on the part of these municipal defendants must be fixed, if at all, upon the state law claims asserted herein. Accordingly, the Court will dismiss plaintiff's constitutional claim against the municipal defendants. This includes any constitutional claim that could be deemed made against Goodwin, as she is sued in her official capacity only, and therefore a suit against her is treated as a suit against the municipality. Claiborne County, 103 F.3d at 509 (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).

### 2. ADA Claim

Plaintiffs also fail to state a cognizable claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the public entity, or be subjected to discrimination by such an entity." Id. While initially referenced in the complaint, the alleged "Forrest Gump" comment is an improper subject for an ADA complaint, and plaintiffs have

failed to challenge the defendants' assertion that such a one-time, insulting comment cannot give rise to ADA liability. Instead, plaintiffs rest their ADA claim on the presumption that Fults targeted or discriminated against Doe because of his Attention Deficit-Hyperactivity Disorder ("ADHD"). However, the ADA simply does not countenance a claim of the sort that plaintiffs assert.

In order to make out a prima facie case for discrimination by a public entity in violation of Title II of the ADA, the plaintiff must demonstrate (1) that he has a disability, (2) that he is otherwise qualified, and (3) that he is being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. <u>Dillery v. City of Sandusky</u>, 398 F.3d 562, 567 (6th Cir. 2005). Plaintiffs in this case can not establish the prima facie elements for an ADA claim, as there is no evidence of any action by RCBE or Fults that denied Doe access to public education or other benefit on the basis of his ADHD. The fact that Fults might have considered Doe's disability in his choice of victim is not the type of discriminatory state action which the ADA was meant to remedy.

While it is not unheard of to assert an ADA claim in the context of physical abuse of a disabled student by his teacher, the Court is unaware of any precedent for upholding such a claim when the abuser or harasser is not in fact one of the student's

18

teachers, or even employed at the school which the student attends. Moreover, the facts alleged in paragraph 37 of plaintiffs' amended complaint (Docket Entry No. 79 at 7), regarding Doe's need to transfer to another Rutherford County high school due to publicity surrounding Fults's criminal trial, and acts of "retaliation" by teachers at that school for his pursuing criminal charges against Fults, are simply too attenuated from any alleged disability discrimination to support the claim asserted. Finally, plaintiffs have not adduced any evidence in support of this claim, but merely argue that the extent to which Doe's ADHD factored into Fults's pursuit of him "remains open for debate and is a matter for expert testimony," and that the fact that Goodwin allegedly knew or should have known of Fults's dangerous propensities "could certainly lead reasonable minds to determine liability on the part of RCBE for discrimination based upon John Doe's disability." (Docket Entry No. 106 at 15).

The Court simply finds this novel claim for disability discrimination to be inadequately pled and insufficiently supported in fact and in law to withstand summary judgment.

### 3. State Law Claims

Except for the two federal claims asserted against Fults, the remaining claims in this case arise out of state tort law, including negligence per se and common law negligence claims

19

against RCBE, the negligent supervision claim against Goodwin, and the various tort claims against Fults. All claims against the individual defendant Fults -- federal and state -- will be adjudicated pursuant to plaintiffs' pending motion for default judgment (Docket Entry No. 115). As to the remaining state law matters, the Court in its discretion declines to continue exercising supplemental jurisdiction over such claims. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." <u>Musson Theatrical, Inc. v. Federal Express Corp.</u>, 89 F.3d 1244, 1254-55 (6th Cir. 1996). That is particularly true in this case, which presents state law questions of duties, immunities, and other issues, and which has already generated a motion to certify a question of law to the Tennessee Supreme Court (Docket Entry No. 89). Accordingly, the remaining state law claims against defendants other than Fults will be dismissed without prejudice.


### IV.    CONCLUSION

In light of the foregoing, the Court finds summary judgment appropriate with respect to the federal claims against defendants RCBE and Goodwin. Accordingly, these claims will be dismissed with prejudice. The pendent state law claims against these defendants will be dismissed without prejudice to plaintiffs'

20

right to re-file in state court.  All claims against defendant Fults will be adjudicated pursuant to the pending motion for default judgment against him.

An appropriate Order will enter.


**ENTERED** this 20th day of January, 2006.


                                        /s/ Joe B. Brown
                                        JOE B. BROWN
                                        UNITED STATES MAGISTRATE JUDGE

Case 3:04-cv-00143   Document 128   Filed 01/20/06   Page 21 of 21 PageID #: 1607